## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Norfolk Division)

| | | |
|---|---|---|
| Michael Williamson, The Estate of<br>Don C. Craft, Kirk O'Donnell,<br>John Lettow, Timothy McGinnis,<br>Fred Newton, William Watson,<br>Chris Hancock, Dale Schoeneman, and<br>International Deep Sea Survey, Inc., | :<br><br>:<br><br>:<br><br>: | Civil Action No. 2:14 cv 9 |
| Plaintiffs, | : | |
| -vs- | : | |
| Columbus-America Discovery<br>Group, Inc. and Recovery<br>Limited Partnership, | :<br><br>: | |
| Defendants. | :<br><br>: | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF RULE B ATTACHMENT APPLICATION

Plaintiffs Michael Williamson, The Estate of Don C. Craft, Kirk O'Donnell, John Lettow, Timothy McGinnis, Fred Newton, William Watson, Chris Hancock, Dale Schoeneman (the "Individual Plaintiffs"), and International Deep Sea Survey, Inc. ("IDSS") (collectively "Plaintiffs") respectfully request this Court to issue a maritime attachment order against Defendants Columbus-America Discovery Group, Inc. ("CADG") and Recovery Limited Partnership ("RLP") (collectively, "Defendants") in connection with tangible or intangible property that Defendants have in this District currently or which is expected to be in this District in the near future. Specifically, Plaintiffs seek to attach the intangible property rights that CADG and/or RLP possess to salvage the *S.S. Central America*, as well as tangible property in the form of any treasure that Defendants recover and bring into this Court for a salvage award in connection with their anticipated renewed recovery efforts. Because the salvage rights are an

award issued by this Court and because the treasure would have to be brought into this Court so that the Court could make its salvage award of that treasure, Plaintiffs also respectfully request that the Court direct that any attachment order that Plaintiffs may receive be perfected by serving it upon the Clerk of this Court. *See* LAR (e)(7) (providing for service of U.S. government employees or officers when property is in the custody of the government).

## STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to Plaintiffs' Verified Complaint dated January 8, 2014 and the Affidavit of Michael J. Frevola dated January 8, 2014 ("Frevola Aff.") for the detailed facts surrounding Plaintiffs' application.

To summarize Plaintiffs' claim, Plaintiffs participated in CADG's search for the wreck of the *S.S. Central America* as project leaders, search theory experts, and sonar technicians. They were required to execute their Agreements[1] in order to participate in the project. They were promised a collective 1.975% of the "net recovery" or "recovery profits" from the salvage operation. After CADG recovered approximately 3 tons of gold from the *S.S. Central America*, which gold ultimately sold for approximately $100 million, Plaintiffs never were paid even though the Defendants' own operating agreement specified that vendors were to be paid before insiders. Instead of Plaintiffs being paid, Defendants' president/managing director Thomas G. Thompson absconded with millions of dollars of corporate funds and gold coins, and is now a fugitive from justice being sought by U.S. Marshals. *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 611 (6th Cir. 2013) (describing factual background).

As discussed below and in the Verified Complaint, Plaintiffs already have established that they have performed their Agreements and that decision has been affirmed by the Sixth

---

[1] All defined terms herein refer to defined terms in the Verified Complaint.

#26862465_v1

Circuit. The sole issues left are the Plaintiffs' damages and which corporate entities in the Defendants' group of companies (as well as Thompson) will be liable to pay those damages.

As a result of Thompson's mismanagement, investors in Defendant RLP and its management company, Columbus Exploration LLC, applied to the Ohio State Court to have the Receiver appointed. He was appointed in June 2014 and has proposed a return to the wreck of the *S.S. Central America*. He is in the process of raising funds from investors and hopes to raise millions, at least some of which appears to be from the same investors from the first salvage effort. The Receiver has refused any payment of the Plaintiffs' claims unless and until a recovery has been made from the wreck.

Plaintiffs have been down this road before. They still await payment for an agreement they signed with Defendants 28 years ago. And now they are asked to once again stand by and trust that they will get paid, all based on the assumption that the next expedition will recover further treasure.

Because of the foregoing, Plaintiffs respectfully request that this Court issue a Rule B attachment order against the Defendants' property as described above for the purpose of securing Plaintiffs' long-pending claim against Defendants.

**ARGUMENT**

**POINT I**

**PLAINTIFFS ARE ENTITLED TO AN ORDER DIRECTING THE ISSUANCE OF A WRIT OF MARITIME ATTACHMENT BECAUSE THEY HAVE SHOWN THAT THEY HAVE A MARITIME CLAIM AND THAT DEFENDANTS CANNOT BE FOUND IN THE DISTRICT**

Federal admiralty courts are empowered to grant maritime attachments under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, which "power's historical purpose has been two-fold: first, to

3

gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment."

*Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 537 n.5 (4th Cir. 2013) (quoting *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 438 (2d Cir. 2006) (citing *Swift & Co. Packers v. Compania Columbiana del Caribe*, 339 U.S. 684 (1950)), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)).

A plaintiff's right to obtain a maritime attachment of a defendant's property to secure its claim is venerable. As stated by the U.S. Supreme Court 140 years ago,

> The use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty . . . has prevailed during a period extending as far back as the authentic history of those tribunals can be traced.

*Vitol*, 708 F.3d at 537 n.5 (quoting *Aqua Stoli Shipping*, 460 F.3d at 437-38) (quoting *Atkins v. The Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 303 (1874)).

Accordingly, maritime attachment is available whenever "the plaintiff has an *in personam* claim against the defendant which is cognizable in admiralty . . . . In other words, the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333." Jarvis, *An Introduction to Maritime Attachment Practice Under Rule B*, 20 J. MAR. L.& COMM. 512, 526 & n.20 (1989). The only other prerequisite necessary for a plaintiff to demonstrate its entitlement to a writ of maritime attachment and garnishment is to show that the "defendant is not found within the district when a verified complaint praying for the attachment and the affidavit required by Rule B(1)(b) are filed. . . ." FED. R. CIV. P. SUPP. R. B(1)(a). Hence, where a plaintiff files a maritime claim and an affidavit showing that the defendant cannot be found within the district, that plaintiff has satisfied the prerequisites for obtaining an order directing the issuance of a writ of maritime attachment and garnishment and the court should issue the requested order without further inquiry:

4

> Although a plaintiff seeking attachment must supply, along with its verified complaint, an affidavit stating that defendant cannot be found within the district, *little else is required and there need only be a hearing <u>after</u> the attachment is served.*

*ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426, 434 (2d Cir. 2000) (emphasis added); *see also* Fed. R. Civ. P. Supp. R. B, *Advisory Committee Notes*, 1985 Amendment (stating that Rule B(1) "envisions that the order [directing issuance of the writ of attachment] will issue when the plaintiff makes a *prima facie* showing that he has a maritime claim against the defendant in the amount sued for and the defendant is not present in the district. A simple order with conclusory findings is contemplated.").

This district's Local Admiralty Rules likewise confirm that an attachment order should issue when a maritime claimant can show that the defendant cannot be found within the district. Local Admiralty Rule (b)(1) defines "not found within the district" as follows:

> A defendant is considered to be "not found within the district" if, in an action *in personam*, service upon the defendant cannot be effected in person or upon an authorized officer or agent within the Commonwealth or if the only effective service is through the Clerk of the State Corporation Commission, the Secretary of the Commonwealth, or under the Virginia Long Arm Statute.

LAR (b)(1). As indicated by the Advisory Committee Note quoted above, the issuance of a writ should be ordered upon the finding that the plaintiff's claim satisfies the threshold elements. Here, the prerequisites for the Plaintiffs' application for an order directing the issuance of a writ of maritime attachment and garnishment have been satisfied.

First, as already established in multiple prior proceedings, Plaintiffs' claims are maritime contract claims subject to admiralty jurisdiction. *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 49 (2d Cir. 2008) (holding "[a]s the district court correctly found, the [Plaintiffs'] contracts at issue here 'were by their terms entered into in connection with [a] maritime

#26862465_v1

commercial venture and are therefore maritime in nature; thus, the Court has jurisdiction of the claims brought thereunder pursuant to 28 U.S.C. § 1333.' ") (quoting *Williamson v. Recovery Ltd. P'ship*, No. 06 Civ. 5724, 2007 WL 102089, at *2 (S.D.N.Y. Jan. 16, 2007)); *accord Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 243031, at *3 (S.D.Ohio Jan. 29, 2009) ("The Court concludes that the parties entered into [Plaintiffs'] contracts in connection with and in furtherance of a maritime commercial venture and are, therefore, maritime in nature. Thus, the Court finds that it has subject-matter jurisdiction over the *Williamson* Plaintiffs' claims."). Thus, the first element of the maritime attachment writ inquiry clearly has been satisfied.

Second, not only did Plaintiffs' search for the Defendants in this district fail to find any evidence of Defendants' presence in this district, *see* Frevola Aff., ¶¶ 4-5, but also each of the Defendants is an Ohio company with its primary office in Ohio. *See id.* ¶ 4 & Exs. 1, 2. Thus, the second element of the maritime attachment writ inquiry likewise has been satisfied.

Defendants may contend that CADG has been a plaintiff in the *S.S. Central America* salvage proceedings for the last 26 years and, therefore, they are "present" for purposes of the Rule B inquiry even though Defendants are not present for *in personam* jurisdiction purposes. This Court's Local Admiralty Rules specifically provide that the Defendants must be capable of being served in the Commonwealth, hence this argument should be rejected. LAR (b)(1). Furthermore, the filing of a lawsuit by a plaintiff in a particular jurisdiction does not create general *in personam* jurisdiction over that plaintiff in that jurisdiction, but rather only serves to create specific *in personam* jurisdiction for counterclaims arising out of the plaintiff's claims asserted in that jurisdiction. *See, e.g., Fox Group, Inc. v. Cree, Inc.*, 749 F. Supp. 2d 410, 415-16 (E.D.Va. 2010) (plaintiff ordered to bring claims against counterparty as counterclaims in New

6

York proceeding as counterparty's bringing of suit in New York gave rise to specific jurisdiction over counterparty in New York). With respect to CADG's claims in the salvage litigation, they relate to CADG being declared the salvor of the *S.S. Central America*. Plaintiffs' claims, on the other hand, have been ruled to not be for salvage. This ruling was made by two separate circuit courts of appeal after Defendants attempted to categorize Plaintiffs' claims as being salvage-related. *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 623 (6th Cir. 2013) (noting that "it would strain all credulity to accept that one who maintains secrecy of his employer's works and writings is the same as one who [provides salvage services]"); *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 49 (2d Cir. 2008) ("While the Defendants may be correct in stating that [Plaintiffs' contracts] are just standard non-compete, nondisclosure, and lease contract agreements, they are incorrect in arguing that the contracts are therefore not maritime contracts.").

For the foregoing reasons, this Court should conclude that Plaintiffs have established the two requisite elements for obtaining the requested maritime attachment order and, therefore, grant Plaintiffs' application.

## POINT II

### A RULE B ACTION MAY BE BROUGHT AS A SUPPLEMENTAL PROCEEDING FOR THE PURPOSE OF OBTAINING SECURITY

As shown by the Second Circuit's Williamson decision (cited above), it is likewise well-settled that a plaintiff with an admiralty cause of action may commence a supplemental maritime attachment proceeding in a jurisdiction other than that in which the primary lawsuit (or other legal proceeding) is pending to secure its claim. *See also Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 631-33 (9th Cir. 1982); *The West of England Ship Owners Mut.*

*Ins. Ass'n (Luxembourg) v. McAllister Bros., Inc.*, 1993 A.M.C. 2559, 2564-66 (E.D. Pa. 1993); *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F. Supp. 189, 190-91 (S.D.N.Y. 1987).[2] This principle has been applied both in cases in which the plaintiff's claims are being litigated in another forum due to the presence of a forum selection clause or the presence of jurisdiction over the defendants elsewhere, *see, e.g., Polar Shipping*, 680 F.2d at 633; *Western Bulk Carriers (Australia), Pty. Ltd. v. P.S. Int'l, Ltd.*, 762 F. Supp. 1302, 1309 (S.D. Ohio 1991); *Staronset Shipping*, 659 F. Supp. at 190-91, and also in the context of arbitration where an arbitration clause requires that the parties arbitrate the dispute as oppose to litigate it. *See, e.g., Winter Storm Shipping v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002) (involving supplemental maritime attachment lawsuit filed pursuant to Rule B in Southern District of New York in connection with London arbitration), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009).

Indeed, the *Polar Shipping* case involved a quite similar fact pattern. In *Polar Shipping*, the district court vacated a writ of maritime attachment and garnishment on grounds that a forum selection clause required the parties' dispute to be resolved by London arbitration or, alternatively, in the High Court of London. *Polar Shipping*, 680 F.2d at 630. The plaintiff appealed, contending that it was entitled to commence and maintain its lawsuit to obtain security pursuant to Rule B despite the governing forum selection clause. The Ninth Circuit agreed, reversing the district court and reinstating the plaintiff's attachment. In so holding, the Ninth Circuit stated:

---

[2] The Plaintiffs could string cite literally dozens of other decisions for this proposition, but in the interest of space and brevity have listed the cited cases as a representative sample.

We hold that *in an admiralty action*, absent express intent to the contrary, *a forum selection clause* providing that all disputes under the [contract] will be determined by a selected foreign court *neither precludes a plaintiff from commencing an action in the district court to obtain security by maritime attachment, nor prohibits the district court from ensuring the availability of security adequate to satisfy a favorable judgment by the selected forum.*

*Polar Shipping*, 680 F.2d at 633 (emphasis added). Quite simply, courts have recognized for decades that a plaintiff in an admiralty proceeding may bring a Rule B maritime attachment claim for the sole purpose of gaining security in another jurisdiction so long as the prerequisites for Rule B are met in the jurisdiction in which the plaintiff's Rule B action has been commenced.

## POINT III

### ISSUANCE OF A WRIT OF MARITIME ATTACHMENT *EX PARTE* IS THE STANDARD MANNER IN WHICH SUCH WRITS ARE ISSUED

It also is well-settled that there is no requirement that Defendants be given notice of the Plaintiffs' attachment application prior to the service of the requested writ on the Defendants' property. The Ninth Circuit's decision in *Polar Shipping* provides an excellent discussion of why prior notice specifically cannot be given in connection with Rule B maritime attachment proceedings, stating in part:

> *Due process does not require pre-attachment notice. Such notice could readily defeat the whole proceeding.* The ship, if it were being libeled under Supplemental Rule C, could depart beyond the jurisdiction; the other property, to be seized under Supplemental Rule C, or attached under Supplemental Rule B, could be shipped out, otherwise disposed of, or concealed; credits, such as are here involved, could be collected or transferred out of the jurisdiction.
>
> \*   \*   \*
>
> Pre-attachment notice and hearing could, as we have explained, defeat both of the purposes of the [maritime] attachment – obtaining jurisdiction, and obtaining security.

9

*Polar Shipping*, 680 F.2d at 638 (emphasis added) (citing *Merchants Nat'l Bank v. Dredge GENERAL G.L. GILLESPIE*, 663 F.2d 1338, 1334 (5th Cir. Unit A 1981); *Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904, 911 (4th Cir. 1981)).

## POINT IV

## THE RECEIVERSHIP ORDER DOES NOT IMPACT THIS COURT'S POWER TO ISSUE THE REQUESTED ATTACHMENT ORDER

It is expected that Defendants will argue that the Ohio State Court's order appointing the Receiver should preclude Plaintiffs from obtaining the requested relief. Defendant CADG is the named Salvor-in-Possession and Substitute Custodian of the wreck of the *S.S. Central America*. CADG *has not* been placed in receivership and it *is not* subject to the Receiver's control. Therefore, any attachment order with respect to CADG should not implicate the Ohio receivership proceedings.

Defendant RLP, however, filed an application last week with this Court in the Salvage Litigation seeking to have it substituted as the purported real party in interest. *See Columbus-America Discovery Group, Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel*, Civ. A. No. 2:87-cv-00363, Docket Entries 1, 1-1, 2, 2-1, 2-2, 2-3, 2-4, 2-5, 2-6, 3 (filed Jan. 3, 2014). Plaintiffs intend to contest that application on a number of grounds. Assuming, however, that RLP was able to successfully substitute itself as the Salvor-in-Possession, the Ohio receivership proceeding does not impact this Court's administration of any treasure recovered by Defendants.

Admiralty precedent makes clear that a court first obtaining jurisdiction over a res retains its jurisdiction even in the event of a subsequent receivership proceeding. As this Court assumed *in rem* jurisdiction over the wreck of the *S.S. Central America* and property salvaged therefrom

10

#26862465_v1

in 1987, the subsequent appointment of the Receiver does not divest this Court of its jurisdiction over the wreck. This precept has been made clear by the United States Supreme Court on multiple occasions:

> The principle which should govern in a conflict of jurisdiction like this has been a number of times stated by this court. As between two courts of concurrent and coordinate jurisdiction, *the court which first obtains jurisdiction and constructive possession of property by filing the bill is entitled to retain it without interference and cannot be deprived of its right to do so*, because it may not have obtained prior physical possession by its receiver of the property in dispute; but where the jurisdiction is not the same or concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction.

*Harkin v. Brundage*, 276 U.S. 36, 43 (1928) (citing multiple cases).

In *Penn General Casualty Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189 (1935), the competing federal and state proceedings were liquidation proceedings against the same defendant and no other defendants. *Id.* at 191-92. Because a state statute regulated the liquidation of insurance companies within the state, the Supreme Court held that the district court could, in its discretion, surrender jurisdiction to the state court. *Id.* at 197. Notably, the Supreme Court did not order the district court to do so. Rather, it left the decision subject to the discretion of the district court. *See id.* at 198-99. Furthermore, the Supreme Court made clear that in the case of proceedings that were not substantially identical and which were not brought at substantially identical times, the court first seized with jurisdiction over the property at issue was the court:

> Where the judgment sought is strictly *in personam*, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as

11

*res adjudicata* in the other. [citations omitted].  But, if the two suits are *in rem* or *quasi in rem*, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other.  To avoid unseemly and disastrous conflicts in the administration of our dual judicial system, [citations omitted], and to protect the judicial processes of the court first assuming jurisdiction, [citations omitted], *the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other*.  This is the settled rule with respect to suits in equity for the control by receivership of the assets of an insolvent corporation. [citations omitted].

*Id.* at 195 (emphasis added).  Furthermore, as noted by the *Penn General* Court, in cases where the lawsuits "do not have substantially the same purpose," the court first issuing its order asserting jurisdictional control over the disputed assets can be seen as the decisive factor:

If the two suits do not have substantially the same purpose, and thus the jurisdiction of the two courts may not be said to be strictly concurrent, and if neither court can act effectively without acquiring possession and control of the property pendente lite, *the time of acquiring actual possession may perhaps be the decisive factor*.

*Id.* at 196 (citing *Moran v. Sturges*, 154 U.S. 256, 284 (1894); *Harkin v. Brundage*, 276 U.S. 36, 43 (1928)) (emphasis added).

Furthermore, in *Moran*, the U.S. Supreme Court discussed the distinction between property already in a receiver's possession (and hence under the control of the court appointing the receiver) versus property not yet under the receiver's control.  *See Moran v. Sturges*, 154 U.S. at 274-83.  Here, even assuming that RLP was allowed to substitute itself for CADG, any treasure that might be recovered in the future from the wreck of the *S.S. Central America* would have to be brought to this Court for a salvage award.  That property would not be property already in the possession of the Receiver, and therefore should be capable of being attached under the guidance provided by the Supreme Court in *Moran*.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an order directing the issuance of a writ of maritime attachment and garnishment against the property of the Defendants that might be found within this District, and direct that perfection of the maritime attachment may be accomplished through serving the Clerk of this Court.

Dated:  January 8, 2014

HOLLAND & KNIGHT LLP

By: _____

Andrew R. Oja  (VSB #80764)
1600 Tysons Blvd, Suite 700
Tysons Corner, Virginia 22102
(703) 720-8600
(703) 720-8610 (facsimile)
andrew.oja@hklaw.com
*Attorneys for Plaintiffs*

*Of Counsel:*
Michael J. Frevola
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
*Pro Hac Vice Application Pending*

13

#26862465_v1